UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREY NELSON,                                        Case No. 13-13454

                    Plaintiff,                       Linda V. Parker
v.                                                   United States District Judge

JOHN DOE, *et al*,                                   Stephanie Dawkins Davis
                                                     United States Magistrate Judge
                    Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION FOR SUMMARY JUDGMENT (Dkt. 53) AND RULE 41(b)**
**DISMISSAL OF DEFENDANTS EAGEA AND STOCKWELL**

**I.    PROCEDURAL HISTORY**

        This is a prisoner civil rights action filed on August 13, 2013 against

employees of the St. Clair County Jail.  (Dkt. 1).  On January 7, 2016, this case

was referred to the undersigned by District Judge Linda V. Parker for all pretrial

purposes.  (Dkt. 30).  On February 9, 2017, defendant Stromberg filed a motion for

summary judgment.  (Dkt. 53).  Plaintiff filed his response on April 6, 2017.  (Dkt.

59).  While Stromberg moved for, and received, permission to file his supporting

exhibits under seal, he did not file the exhibits or serve them on plaintiff before

plaintiff filed his response.  (Dkt. 52, 54).  The Court directed Stromberg to file

and serve the exhibits and he did so on May 23, 2017.  (Dkt. 61, 62).  On May 31,

2017, the Court entered an order giving plaintiff the opportunity to file a

supplemental response brief to address the new exhibits. (Dkt. 63). Plaintiff was ordered to file any supplemental response by June 21, 2017. *Id*. That deadline has now passed and plaintiff has not filed any supplemental brief. Thus, this motion is now ready for report and recommendation.

Additionally, on November 3, 2016, the Court ordered plaintiff to provide the correct addresses for defendants Terry Stockwell and B. Eagea by December 31, 2016, or face dismissal of these defendants. (Dkt. 44). Plaintiff did not, however, provide the addresses for service. Thus, the Court ordered plaintiff to show cause, in writing, by April 18, 2017, why the undersigned should not recommend dismissal of these defendants under Rule 4(m) for failure to provide the correct addresses so that service could be effectuated in a timely fashion. (Dkt. 56). That Order warned that **"[f]ailure to satisfactorily or timely comply with this order will result in a recommendation that the action against defendants Terry Stockwell and B. Eagea should be dismissed pursuant to Federal Rule of Civil Procedure 4(m) and Local Rule 41.2**." *Id*. (emphasis in original). Plaintiff did not file a response to this Order to Show Cause, request an extension of time, or otherwise contact the Court.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant Stromberg's motion for summary judgment be **GRANTED** and that defendants Stockwell and Eagea be **DISMISSED** from this matter under Rule

4(m), without prejudice.

## II.     FACTUAL BACKGROUND

Plaintiff has sued defendant Stromberg, alleging that he, along with two nurses, were deliberately indifferent to his medical needs while he was an inmate confined at the St. Clair County Jail.[1]  In particular, he claims that he was not provided proper medical attention for an infection of his left eye, while he was a federal pretrial detainee in the St. Clair County Jail.  Specifically, plaintiff alleges that on October 16, 2010, he was suffering from an irritation in and around his left eye. (Dkt. 1, Pg ID 3).  Plaintiff alleges that he brought his condition to the attention of two members of the jail's nursing staff, whom he identifies in the Complaint as Jane Doe I and Jane Doe II.  *Id*. at Pg ID 3-4.  He says that these two members of the jail nursing staff delayed having him seen by a physician.  *Id*. at Pg ID 4.

Plaintiff alleges that he was seen by John Doe, M.D., whom he now identifies as defendant Reid Stromberg, M.D., on October 20, 2010, and received a prescription for an eye drop medication.  (Dkt. 1, Pg ID 4).  Plaintiff's complaint states that he was prescribed "the wrong medication" (Dkt. 1, Pg ID 1), and that Dr. Stromberg prescribed this medication to him without referring him "to the

---

[1] At the time plaintiff filed this complaint, he was confined to federal prison in Georgia. (Dkt. 1, Pg ID 2).  He has since been released from prison and resides in Michigan.  (Dkt. 37, 48).

proper health care provider." (Dkt. 1, Pg ID 4). On October 21, 2010, after taking the medication for only one day, plaintiff claims his vision "completely deteriorated." *Id*. Plaintiff says that, once he arrived at the federal prison, he saw an ophthalmologist who prescribed the proper medication and who confirmed that he previously received the wrong medication. *Id*. at Pg ID 4-5. Plaintiff alleges that he now has permanent loss of eyesight due to defendant's refusal to timely provide him with the proper medication. *Id*. at Pg ID 5.

The medical records from St. Clair County Jail indicate that on October 16, 2010, plaintiff provided the jail's nursing staff with a request that he be seen by a physician regarding an irritation of his left eye. (Dkt. 62, Pg ID 254). According to the request, this was a condition that the plaintiff had suffered from before, and it had "flared up." *Id*.

On October 18, 2010, a Nurse Eagea told the plaintiff that she would ask a physician to see him on October 19, 2010. (Dkt. 62, Pg ID 253). Defendant Dr. Stromberg saw plaintiff on October 19, and diagnosed him with an infection of his left eye. (Dkt. 62, Pg ID 254). Dr. Stromberg prescribed Acyclovir and Viroptic. *Id*. According to defendant Stromberg's brief, he also requested that the plaintiff be seen by an ophthalmologic specialist. In support of this claim, Stromberg points to the request for an ophthalmologic consult written by Nurse King on October 20, 2010, and approved by an individual named D. L. King on October

21, 2010.  (Dkt. 62, Pg ID 251).

A subsequent note by Nurse Eagea states that the plaintiff was seen by a physician on October 19, and that the plaintiff's medications were "picked up and started right away."  (Dkt. 62, Pg ID 253).  On October 20, the plaintiff was again seen by Nurse Eagea.  (Dkt. 62, Pg ID 253).  Plaintiff complained that he had to wait so long for his medication that his left eye was now blind.  *Id*.  Nurse Eagea's note also records an interaction between the plaintiff and Sgt. Strode.  According to this note, the plaintiff complained that he was receiving the wrong medication. *Id*.  Nurse Eagea tried to explain to the plaintiff that he was mistaken, but he "wants to argue & very sure we are wrong."  *Id*.

On October 25, 2010 and October 27, 2010, the plaintiff was seen by an ophthalmologic consultant, as requested by Dr. Stromberg.  (Dkt. 62, Pg ID 256-57).  The specialist diagnosed the plaintiff with an eye infection.  *Id*.  According to this specialist, plaintiff had a history of this condition recurring, and that it had an unknown etiology.  *Id*.  He continued the plaintiff on the Acyclovir (which had also been prescribed by Dr. Stromberg), and started him on prednisolone acetate and atropine drops.  *Id*.  According to the physician's note, the plaintiff was to return in a week after the October 27, 2010 visit.  Defendant says that he has not been able to receive any further records from this physician (or any other physician), due to the plaintiff's failure to provide a medical authorization.

Notably, plaintiff apparently did ultimately sign the medical authorization, but no additional records have been provided to the Court. (Dkt. 50, 58, 60).

## III.  ANALYSIS AND CONCLUSION

### A.  Motion for Summary Judgment

#### 1.  Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non- moving party. *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir. 2004).

In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254.

Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

        2.     Due Process/Eighth Amendment

        (a)     Parties' Arguments

According to defendant, the records in this case demonstrate that he is entitled to judgment as a matter of law. Defendant contends that there is no evidence that he was deliberately indifferent to the plaintiff's medical needs. Rather, defendant maintains that the records in this case demonstrate that he saw plaintiff when requested by the jail nursing staff, examined the plaintiff, diagnosed his condition, prescribed medications, and requested that he be seen by a specialist

in ophthalmology. Moreover, pursuant to Dr. Stromberg's request, the plaintiff was seen, examined, diagnosed and treated by a specialist in ophthalmology. Defendant points out that, although the plaintiff alleges that he was "prescribed the wrong medication, and denied the appropriate medical attention," these allegations are not sufficient to support a cause of action under § 1983. This amounts to a mere difference of opinion between an inmate and a physician. In order to make out a cause of action against Dr. Stromberg under this statute, the plaintiff must present evidence that Dr. Stromberg was deliberately indifferent to his medical needs, which defendant asserts plaintiff has not done.

Defendant also points out that any liability must be based on his own actions under the circumstances that he faced, and not based on any problems caused by the alleged acts or omissions of others. While plaintiff might be dissatisfied with the care provided by the nurses at the jail, defendant maintains that this has no bearing on the plaintiff's claims against him. Rather, plaintiff's claim against Dr. Stromberg must be based on his own actions, not those of the nurses.

In response, plaintiff asserts that discovery to date, including interrogatories, requests for admission, jail records, and plaintiff's records from the University of Michigan Kellogg Eye Care Clinic suggest that there is a question of fact that should be presented to the jury. Plaintiff disputes defendant's

claim that he requested for plaintiff to see a specialist in ophthalmology.

According to plaintiff, District Judge Arthur Tarnow ordered plaintiff to see an

ophthalmologist in *United States v. Corey*, Case No. 10-cr-20420, on October 20,

2010. (Dkt. 59, Pg ID 241). Plaintiff says that "transcripts are on the way" but

none have been submitted to the Court.

Based on the foregoing, plaintiff maintains that there is a genuine issue of

material fact regarding Dr. Stromberg's treatment of him in 2010. Plaintiff says he

has a real injury and there is a dispute as to the cause of the damage done after

treatment by Dr. Stromberg, which should go to a jury. *Id*. Plaintiff submits no

supporting exhibits along with his response and, as set forth above, did not submit

a supplemental response after defendant submitted his exhibits.

(b).    Analysis

In this case, because plaintiff was a pretrial detainee during the time he was

at St. Clair County Jail (rather than a convicted prisoner), the applicable

constitutional provision is the Due Process Clause of the Fourteenth Amendment

(rather than the Eighth Amendment). *See Phelps v. Coy*, 286 F.3d 295, 300 (6th

Cir. 2002). However, the Eighth Amendment's protection against cruel and

unusual punishment extends to pretrial detainees through the Fourteenth

Amendment's Due Process Clause, *see Whitley v. Albers*, 475 U.S. 312, 327

(1986), and thus claims by pretrial detainees challenging conditions of

10

confinement are analyzed under the Eighth Amendment. *See Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *see also Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494-95 (6th Cir. 2008) (asserting that the same deliberate-indifference inquiry applies under the Fourteenth Amendment as under the Eighth Amendment).

In the context of medical care, a prisoner's Eighth Amendment right to be free from cruel and unusual punishment is violated only when the prisoner can demonstrate a "deliberate indifference" to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted). Furthermore, mere negligence in identifying or treating a medical need does not rise to the level of a valid mistreatment claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

A viable Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted

with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834.  Courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Hudson*, 503 U.S. at 8 (internal citations and quotation marks omitted).  Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.* at 9.

The subjective component requires that a defendant act with deliberate indifference to an inmate's health or safety. *Farmer*, 511 U.S. at 834.  To establish the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk."  *Id.* at 837.  In other words, this prong is satisfied when a prison official acts with criminal recklessness, i.e., when he or she "consciously disregard[s] a substantial risk of serious harm."  *Brooks v. Celeste*, 39 F.3d 125,

128 (6th Cir. 1994) (*citing Farmer*, 511 U.S. at 839-40). "Basically, there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Lewis v. Corr. Med. Servs.*, 2009 WL 799249, at *2 (E.D. Mich. Mar. 24, 2009).

In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the plaintiff fails to state a claim under the Eighth Amendment. *See McFarland v. Austin*, 196 Fed. Appx. 410, 411 (6th Cir. 2006) ("as the record reveals that McFarland has received some medical attention and McFarland's claims involve a mere difference of opinion between him and medical personnel regarding his treatment, McFarland does not state a claim under the Eighth Amendment"); *White v. Corr. Med. Servs., Inc.*, 94 Fed. Appx. 262, 264 (6th Cir. 2004) (affirming dismissal of the complaint for failure to state a claim where the essence of plaintiff's claims was that he disagreed with the defendants' approaches to his medical treatment where defendant discontinued plaintiff's previous course of treatment and prescribed what plaintiff considered to be less effective treatment); *Catanzaro v. Michigan Dep't of Corr.*, 2010 WL 1657872, at *3 (E.D. Mich. Feb. 28, 2010) (plaintiff failed to state a claim of deliberate indifference when "he specifically alleges that he was given medications that proved

ineffective to relieve his symptoms, rather than medications that he believed were more effective, such as Drixoral, Sudafed and Deconamine"), *adopted by,* 2010 WL 1657690 (E.D. Mich. Apr. 22, 2010); *Allison v. Martin*, 2009 WL 2885088, at *7 (E.D. Mich. Sept. 2, 2009) (plaintiff failed to state a claim of deliberate indifference in violation of the Eighth Amendment when the complaint reveals plaintiff was seen over a dozen times for his eczema and was given medication, though not the "type" and quantity he requested). Thus, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock*, 273 F.3d at 703.

Defendant Dr. Stromberg does not dispute that plaintiff's eye infection was sufficiently serious in nature to satisfy the objective prong of the deliberate indifference standard, and the Court agrees that the objective prong is satisfied. However, plaintiff's claim fails as to the subjective prong. In the view of the undersigned, plaintiff's deliberate indifference claim against Dr. Stromberg merely presents a difference of opinion that does not rise to the level of a constitutional violation. Plaintiff was seen immediately by nursing staff after complaining about his eye infection symptoms on October 16, 2010. Dr. Stromberg then examined and treated him a few days later, on October 19, 2010. Dr. Stromberg reasonably

implemented his medical judgment in prescribing two medications to treat

plaintiff's eye infection and made the determination that plaintiff needed to

follow-up with an ophthalmologist.  Plaintiff then saw the specialist six days later,

on October 25, 2010.  There was no apparent delay in treatment and plaintiff has

not shown that the course of treatment was so inappropriate that it could be

viewed as deliberate indifference.  Rather, in the view of the undersigned,

defendant exercised his professional medical judgment in determining how and

when to treat plaintiff and thus, was not deliberately indifferent to plaintiff's eye

infection.  Defendant Stromberg's motion for summary judgment should therefore

be granted.

       B.      <u>Rules 4(m) and 41(b) Dismissal as to defendants Stockwell and Eagea</u>

       Under Federal Rules of Civil Procedure 41(b), a federal court may *sua*

*sponte* dismiss a claim for failure to prosecute or comply with an order.  *Link v.*

*Wabash R.R. Co.*, 370 U.S. 626, 630-32 (1962); *Steward v. City of Jackson*, 8 Fed.

Appx. 294, 296 (6th Cir. 2001).  Indeed, the "authority of a federal trial court to

dismiss a plaintiff's action with prejudice because of his failure to prosecute

cannot seriously be doubted."  *Link*, 370 U.S. at 629.  "The power to invoke this

sanction is necessary in order to prevent undue delays in the disposition of

pending cases and to avoid congestion in the calendars of the District Courts."

*Link*, 370 U.S. at 629-630.  "[D]istrict courts possess broad discretion to sanction

parties for failing to comply with procedural requirements." *Tetro v. Elliott*

*Popham Pontiac*, *Oldsmobile*, *Buick*, *and GMC Trucks*, *Inc.*, 173 F.3d 988, 991

(6th Cir. 1999), citing *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991).

Further, "a district court can dismiss an action for noncompliance with a local rule

... if the behavior of the noncomplying party rises to the level of a failure to

prosecute under Rule 41(b) of the Federal Rules of Civil Procedure." *Tetro*, 173

F.3d at 992.

The Sixth Circuit considers four factors in reviewing the decision of a

district court to dismiss a case for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad
> faith, or fault; (2) whether the adversary was prejudiced
> by the dismissed party's conduct; (3) whether the
> dismissed party was warned that failure to cooperate
> could lead to dismissal; and (4) whether less drastic
> sanctions were imposed or considered before dismissal
> was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005), citing *Knoll v.*

*American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999). On balance, these

factors weigh in favor of dismissal here as to defendants Stockwell and Eagea.

With respect to the first factor, similar to the facts in *White v. Bouchard*, 2008 WL

2216281, *5 (E.D. Mich. 2008), "it is not clear whether plaintiff's failure to

prosecute is due to willfulness, bad faith or fault." *Id*. Regardless, "defendants

cannot be expected to defend an action," that plaintiff has "apparently abandoned,

not to mention the investment of time and resources expended to defend this case."

*Id*. Consequently, the undersigned concludes that plaintiff's failures to respond to the order to provide addresses and the order to show cause amount to abandonment for the purpose of this analysis. *Brown v. VHS of Mich., Inc.*, 545 Fed. Appx. 368, 372 (6th Cir. 2013) (A plaintiff is deemed to have abandoned a claim when he fails to address it in response to a motion for summary judgment.). Thus, the first and second factors weigh in favor of dismissal.

Moreover, based on the multiple warnings given to plaintiff, the third factor also clearly weighs in favor of dismissal. (Dkt. 44, 56). This court has regularly dismissed cases under Rule 41(b) after a plaintiff has been warned of dismissal, failed to comply with court orders without explanation, where defendants expended resources on an abandoned action and lesser sanctions would prove useless. *See e.g.*, *Croton v. Recker*, 2012 WL 3888220, at *2 (E.D. Mich. Sept. 7, 2012). Importantly, despite the Court's warnings that his action may be dismissed, plaintiff failed to respond to the Court's order to provide addresses for service (Dkt. 44) and to the Court's order to show cause regarding why that information has not been provided (Dkt. 56). Indeed, the court specifically warned plaintiff that it was his responsibility to submit sufficient information so that all defendants could be served. (*See* Dkt. 56). The Court expressly told plaintiff that if any defendant remained unserved after the extended summons expired, plaintiff "may

be required to show good cause why this action should not be dismissed." *Id*.

And, in the show cause order, the Court indicated that a failure to respond "**will result in a recommendation that the action against defendants Terry Stockwell and B. Eagea be dismissed pursuant to Federal Rule of Civil Procedure 4(m) and Local Rule 41.2**." *Id*. (emphasis in original). Despite these warnings, plaintiff has provided no addresses for service, nor has he offered a "good reason" why those addresses have not been provided. *See Labreck v. U.S. Dep't of Treasury*, 2013 WL 511031, at *2 (E.D. Mich. 2013) (recommending dismissal for plaintiff's failure to comply with orders of the court), *adopted by* 2013 WL 509964 (E.D. Mich. 2013).

Finally, given plaintiff's repeated failure to provide the addresses for service in response to the court's order to show cause despite the lengthy passage of time since plaintiff initiated this action, the undersigned sees no utility in considering or imposing lesser sanctions. Thus, taken together, these factors support dismissal for failure to prosecute. It is true that "district courts should be especially hesitant to dismiss for procedural deficiencies where, as here, the failure is by a *pro se* litigant." *White v. Bouchard*, 2008 WL 2216281, at *5 (E.D. Mich. May 27, 2008) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). However, "dismissal is appropriate when a *pro se* litigant has engaged in a clear pattern of delay." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Indeed, a *sua sponte*

dismissal may be justified by a plaintiff's "apparent abandonment of [a] case."

*White*, 2008 WL 2216281, at *5 (citing *Washington v. Walker*, 734 F.2d 1237,

1240 (7th Cir. 1984)); *see also Labreck v. U.S. Dep't of Treasury*, 2013 WL

511031, at *2 (E.D. Mich. 2013) (recommending dismissal for plaintiff's failure to

comply with orders of the court), *adopted by* 2013 WL 509964 (E.D. Mich. 2013);

*McMillian v. Captain D's*, 2007 WL 2436668, at *2 (D.S.C. 2007) (dismissing

motion to dismiss and to compel arbitration because of plaintiff's failure to

respond despite being advised of the applicable procedures and possible

consequences for failure to respond adequately). The undersigned concludes that,

for the reasons discussed above, plaintiff has effectively abandoned his case

against defendants Terry Stockwell and B. Eagea and the claims against them

should be dismissed.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendant Stromberg's motion for summary judgment be **GRANTED** and that

defendants Stockwell and Eagea be **DISMISSED** from this matter under Rule

4(m), without prejudice.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local

Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 7, 2017                              s/Stephanie Dawkins Davis
                                                  Stephanie Dawkins Davis
                                                  United States Magistrate Judge

# CERTIFICATE OF SERVICE

I certify that on August 7, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record, and that I have mailed by U.S. Postal Service to the following non-ECF participant: <u>Corey Nelson, 16861Whitcomb, Detroit, MI 48235.</u>

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
